2020 IL App (1st) 170550

No. 1-17-0550

Opinion filed September 30, 2020

FOURTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 96 CR 123(03) |
| TYWON KNIGHT, | ) ) | The Honorable Neera Lall Walsh, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Hall and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1      Defendant Tywon Knight appeals from the denial of his petition for postconviction relief.

¶ 2      After a jury trial, defendant was convicted of first degree murder, aggravated kidnapping, and aggravated vehicular hijacking and received consecutive sentences, for a total of 145 years with the Illinois Department of Corrections (IDOC). Codefendant Richard Morris was convicted of the same offenses and received consecutive sentences, for a total of 105 years.

¶ 3    Defendant's postconviction petition alleges that his sentence is unconstitutionally disparate from Morris's sentence. On appeal from the dismissal of this petition at the second stage, this court found that postconviction counsel had provided unreasonable assistance, and we reversed and remanded for third-stage proceedings. Specifically, we found that counsel had provided inaccurate "sentencing information as to defendant and Morris." *People v. Knight*, 2014 IL App (1st) 122931-U, ¶ 25.

¶ 4    On this appeal, defendant claims, among other things, that the trial court erred by reappointing the same counsel whom this court already found to have provided unreasonable assistance and that the counsel again provided unreasonable assistance by again providing inaccurate sentencing information to the trial court. After examining the record, we find defendant's claims persuasive. For the reasons explained below, we reverse and remand for new third-stage proceedings with different counsel.

¶ 5                                   BACKGROUND

¶ 6    These offenses stem from the shooting death of Ervin Shorter on December 2, 1995. In December 1998, defendant and Morris were tried simultaneously to separate juries. This court previously described the evidence at trial in other prior orders in this case, which we incorporate by reference. *People v. Knight*, No. 1-99-0532 (Oct. 3, 2003) (unpublished order under Illinois Supreme Court Rule 23) (direct appeal); *People v. Knight*, No. 1-07-0578 (Oct. 9, 2009) (unpublished order under Illinois Supreme Court Rule 23) (postconviction petition); *Knight*, 2014 IL App (1st) 122931-U (prior order regarding this same postconviction petition).

¶ 7        The State's evidence established that, early in the morning of December 2, 1995, defendant, Morris, Morris's wife Lyda,[1] and Brian Hoover decided to carjack the victim's new Chevrolet Impala, which they had observed in a restaurant parking lot. The three men approached the victim's vehicle, held a gun to the victim's head, entered the vehicle and drove away with the victim. Lyda followed in a different vehicle. At some point, they stopped and ordered the victim at gunpoint into the trunk of his own vehicle. A bystander who was driving behind the victim's vehicle observed the victim's wiggling fingers sticking out from the trunk and called the police. After a couple of more stops and switching of vehicles, defendant and Morris were driving the victim's vehicle, which they stopped in an alley and exited.

¶ 8        An assistant state's attorney (ASA) testified that defendant made an oral statement within 24 hours of the offense. Defendant stated that Morris ordered the victim to exit the trunk and to lay on the ground and that Morris shot the victim twice in the head. Defendant admitted that he knew Morris had a gun and planned to kill the victim.

¶ 9        Later that morning, two police officers observed defendant and Morris exiting the victim's vehicle. Upon noticing the police, defendant and Morris fled but were apprehended after a brief pursuit. Along the course of their flight, police recovered two loaded pistols. Forensic testing established that one of the pistols fired the bullets that killed the victim, who was found dead in the alley. An autopsy revealed that the victim died of two gunshot wounds to the head.

---

[1]Since Lyda and codefendant Richard Morris share the same last name, we refer to her by her first name.

¶ 10        At the portion of the trial heard only by Morris's jury, the State introduced Morris's written statement into evidence. In his statement, Morris stated that he targeted the victim because he thought the victim was a drug dealer, and he admitted shooting the victim.

¶ 11        Also in the portion of the trial heard only by his jury, Morris testified in his own defense, recanting the statement that he had provided to the ASA and asserting that Hoover was the shooter. Morris testified that, after they parked in the alley, Hoover ordered the victim to exit the trunk, and Morris knew that Hoover intended to shoot the victim. Morris testified that he told Hoover that he "wasn't going to have nothing to do with it," and Morris went to sit in the front seat of the victim's vehicle, where he heard two gunshots. When Morris was asked why he had previously told the ASA that he was the shooter, he testified that he was hoping to arrange a deal for his wife.

¶ 12        After hearing closing arguments and jury instructions, their respective juries found both defendant and Morris guilty of first degree murder, aggravated vehicular hijacking, and aggravated kidnapping. Morris was sentenced to death, which was later commuted to life imprisonment,[2] for the murder and to concurrent 30 years and 15 years for the hijacking and kidnapping offenses.

¶ 13        At defendant's sentencing on January 29, 1999, the State argued that the murder was particularly brutal and heinous and asked for a natural life sentence. In response, defense counsel observed that the State in its opening statement conceded defendant was not the shooter. In its opening statement before defendant's jury, the State had argued: "Richard Morris pointed that .357 revolver at [the victim] and squeezed that trigger twice. ***

---

[2]Governor George Ryan commuted Morris's death sentence to life imprisonment without the possibility of parole or mandatory supervised release. *People v. Morris*, 209 Ill. 2d 137, 139 n.1 (2004).

[Defendant's] partner shot [the victim]." Defense counsel also noted that defendant was "20, 21 years old at the time"[3] of the offense and asked for a sentence of less than natural life. The trial court found that "the conduct here was heinous and brutal and indicative of wanton cruelty" and sentenced defendant to consecutive terms of 100, 30, and 15 years for the murder, hijacking, and kidnapping offenses, respectively.

¶ 14     On direct appeal, defendant claimed, among other things, that his consecutive and extended-term sentences violated the holding of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). On appeal, this court affirmed defendant's convictions and sentences but vacated the portion of the trial court's sentences requiring consecutive sentences and "remanded for a determination of whether defendant is required to serve his sentences consecutively." *Knight*, No. 1-99-0532, slip order at 24. Upon remand, the trial court again imposed consecutive sentences.

¶ 15     While defendant's direct appeal was pending, he filed a *pro se* postconviction petition that the trial court summarily dismissed. This court dismissed the subsequent appeal without prejudice to defendant's filing another postconviction petition on the ground that, since he had not yet been resentenced, he had no conviction. *People v. Knight*, No. 1-02-1551 (2003) (unpublished order under Illinois Supreme Court Rule 23). Therefore, he had a right to file another petition.

¶ 16     In November 2006, defendant filed a *pro se* postconviction petition alleging ineffective assistance of appellate counsel. The trial court summarily dismissed it on February 1, 2007, and this court affirmed. *Knight*, No. 1-07-0578 (2009) (unpublished order under Illinois

---

[3]Defendant's presentence investigation report states that defendant's birthdate was December 27, 1974. The date of the offense was December 2, 1995. Thus, defendant was still 20 years old at the time of the offense.

Supreme Court Rule 23). Another panel of this court mistakenly stated on page one that defendant's sentences were "concurrent." *Knight*, No. 1-07-0578, slip order at 1.[4] However, this one word was clearly an oversight error, because the order correctly stated on both pages eight and nine that the sentences were "consecutive," and even explained that, on remand, the trial court had again imposed "the same *** consecutive sentencing." *Knight*, No. 1-07-0578, slip order at 8-9.

¶ 17        On March 18, 2004, the Illinois Supreme Court reversed Morris's conviction on the ground that his counsel had provided ineffective assistance of counsel, where "[i]n her opening statement to the jury, defense counsel readily admitted that [Morris] participated in the kidnapping and murder" of the victim and also introduced other crimes by Morris. *People v. Morris*, 209 Ill. 2d 137, 182, 184, 188 (2004).

¶ 18        After Morris's retrial in 2006,[5] a jury again found him guilty of first degree murder, aggravated vehicular hijacking and aggravated kidnapping, for which he was sentenced, respectively to 60 years, 30 years and 15 years. The jury specifically found that the State failed to prove beyond a reasonable doubt: (1) "that the murdered person was actually killed by [Morris]" and (2) "that [the] first degree murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty."

---

[4]Another panel of this court noted the oversight error on page one of the 2009 order. *Knight*, 2014 IL App (1st) 122931-U, ¶¶ 16, 28.

[5]Another panel of this court issued an order concerning this petition that referred to Morris's "retrial in 2007." *Knight*, 2014 IL App (1st) 122931-U, ¶ 17. However, this prior order also observed that, at that time, the "records" for Morris's retrial had "not been provided to this court." *Knight*, 2014 IL App (1st) 122931-U, ¶ 33. Now, the records of Morris's retrial have been provided to this court, and they show that his retrial occurred in 2006.

¶ 19        At Morris's resentencing on October 10, 2006, the parties argued over whether the trial judge could consider Morris's testimony from his original 1998 trial.[6] The trial judge observed that the standard for sentencing is different than at trial[7] and he ruled that, in sentencing Morris, he would consider Morris's prior trial testimony concerning the offense in question but not the portions concerning other crimes. During the State's argument concerning aggravation, the State observed that, because of the jury's finding that the State had failed to prove beyond a reasonable doubt that Morris was the shooter or that the murder was brutal and heinous, it could not ask the court to sentence Morris to natural life. The State asked the trial court to sentence Morris to the maximum, which was 60 years for the murder, 30 years for the hijacking, and 15 years for the kidnapping, for a total of 105 years with consecutive sentences.

¶ 20        After considering factors in aggravation and mitigation, the trial court found that the evidence established that Morris was "the moving force" in the "plan to rob." The court further found that Morris was the shooter and described the offense as follows:

> "That plan mistakenly focused upon a regular guy, a working man, simply a citizen minding his own business on his way home, forced into his car at gun point, into the trunk of the vehicle, kidnapped, driven to the south side of the—north side of the city, removed from his own car, then shot to death by Mr. Morris. I think the evidence clearly reflects that."

[6]The trial judge who presided over Morris's retrial and resentencing was the same trial judge who had presided over the original 1998 trial and sentencings of both defendant and Morris.

[7]"[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *United States v. Watts*, 519 U.S. 148, 157 (1997); see *People v. Brown*, 229 Ill. 2d 374, 385 (2008) (preponderance of the evidence is the standard of proof at sentencing).

The trial court then sentenced Morris to the maximum available sentence, which was a total of 105 years. On appeal, this court affirmed. *People v. Morris*, No. 1-06-3474 (2009) (unpublished order under Illinois Supreme Court Rule 23).

¶ 21        On May 7, 2009, defendant filed the *pro se* postconviction petition that is the subject of this appeal. In his petition, he alleged, among other things, that his sentence of 145 years is unconstitutionally disparate from the sentence of 105 years received by Morris because Morris was the actual shooter. Defendant's petition advanced to the second stage where counsel was appointed. On April 17, 2012, the State filed a motion to dismiss which stated, in relevant part:

> "[Defendant] was sentenced to consecutive terms of 100, 30 and 15 years imprisonment for first degree murder, aggravated kidnapping and aggravated vehicular hijacking. Following appeal, the Illinois Appellate Court affirmed [defendant's] convictions, but remanded his case for re-sentencing. [Defendant] was given the same sentence on all counts, however, all sentences were ordered to be served *concurrently*." (Emphasis in original.)

¶ 22        The statement in the State's motion that defendant's sentences were to be served concurrently is factually incorrect because they were to be served consecutively. Morris's total sentence was actually shorter than defendant's total sentence. However, based on this factual inaccuracy, the State argued in its motion that defendant's total sentence was shorter than Morris's total sentence:

> "[Defendant], however ignores the fact that codefendant's sentence consists of *consecutive* terms of 60 plus 30 plus 15 years' imprisonment for a composite sentence of 105 years' imprisonment. [Defendant's] sentence consists of concurrent terms of 100, 30 and 15 years' imprisonment, for a composite term [of] 100 years. In other

words, [defendant] was sentenced to five years less than co-defendant and, therefore, his sentence is not greater than his co-defendant's sentence." (Italics and underlining in original).

¶ 23    On June 19, 2012, the trial court heard argument on the State's motion, and the State repeated its factually inaccurate statement, without any objection from defense counsel. The State wrongfully asserted that defendant's total sentence was actually five years less than Morris's total sentence. After repeating this accepted fact, the trial court granted the State's motion.

¶ 24    On June 20, 2012, defense counsel sent defendant a letter informing defendant that the trial court had granted the State's motion. In explanation, counsel's letter stated: "your concurrent sentences total 100 years and Morris' total consecutive sentences was [*sic*] 105 years." Thus, counsel's letter repeated the same factual inaccuracy contained in the State's motion and repeated by the trial court.

¶ 25    On July 8, 2012, defendant filed a motion to reconsider in which he asked the trial court to "appoint him a new reliable and reasonable attorney." The trial court denied this motion on August 20, 2012.

¶ 26    On appeal, this court found that defendant's postconviction counsel failed to provide reasonable assistance:

> "[D]efendant argues his postconviction counsel failed to provide reasonable assistance by providing the court with accurate sentencing information as to defendant and Morris. We agree." *Knight*, 2014 IL App (1st) 122931-U, ¶ 25.

We reversed and "remanded for an evidentiary hearing on the disparity between defendant's 145-year sentence and Morris's 105-year sentence." *Knight*, 2014 IL App (1st) 122931-U,

¶ 30. Observing that the records of Morris's retrial and sentencing were not a part of the appellate record then before us, we specifically directed that those records and the pertinent facts in them "should be presented to the circuit court on remand so it may fully consider defendant's disparate sentencing claim." *Knight*, 2014 IL App (1st) 122931-U, ¶ 33.

¶ 27        On remand, the trial judge who had presided over the second stage proceedings recused himself, and the matter was assigned to a different judge. On February 9, 2015, the same postconviction counsel appeared on the matter in front of the new judge. When the court asked if his client was expected to be there, he replied "[n]ot at all." The trial court asked him "where are we on this matter," and counsel stated that the appellate court had ordered the trial court to obtain the records relating to Morris's case. Counsel then presented the trial court with an order for the records relating to both defendant and Morris.

¶ 28        On April 27, 2015, the prosecutor informed the trial court that she was new to the case, but she believed there was a claim of unreasonable assistance of postconviction counsel that had yet to be resolved and she asked the trial court to "determine" that issue. The trial court found: "there was not a ruling by the Appellate Court of no unreasonable assistance of counsel. Therefore, I believe that [counsel] can st[a]y on the case."

¶ 29        On May 18, 2016, the trial court asked counsel to "talk to your client and see why it is that he's filing or why he finds it necessary to file other motions when he's represented by you." The trial court asked: "You want him here so you could have that chat with him about that?" However, counsel indicated it was sufficient for him to talk with defendant on the phone.

¶ 30        On February 2, 2017, the third-stage evidentiary hearing was held without the introduction of evidence. Instead, it proceeded based solely on argument. Defense counsel argued:

"it is troublesome that [defendant] was found accountable for the heinous acts of

Mr. Morris who was serving 60 years for the murder compared to Mr. Knight's 100.

But at Morris' *resentencing*, he was *found* accountable for the acts of Brian Hoover."

(Emphasis added.)

However, as we observed above, at Morris's resentencing, the trial court found that Morris was not simply accountable but rather was the actual shooter. Based on the arguments made, the trial court was not persuaded that Morris's and defendant's sentences were unconstitutionally disparate and denied defendant's petition for postconviction relief. Defendant filed a timely notice of appeal, and this appeal followed.

¶ 31                                          ANALYSIS

¶ 32        On appeal, defendant argues, among other things, that the trial court erred by reappointing the same counsel who had provided unreasonable assistance in the same proceeding and that counsel again provided unreasonable assistance.

¶ 33        The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)) provides a statutory remedy for criminal defendants who claim their constitutional rights were violated at trial. *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act is not intended to be a substitute for an appeal; instead, it is a collateral proceeding which attacks a final judgment. *Edwards*, 2012 IL 111711, ¶ 21.

¶ 34        The Act provides for three stages of review by the trial court. *People v. Domagala*, 2013 IL 113688, ¶ 32. At the first stage, the trial court may summarily dismiss a petition only if it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2014); *Domagala*, 2013 IL 113688, ¶ 32.

11

¶ 35    At the second stage, counsel is appointed if a defendant is indigent. 725 ILCS 5/122-4 (West 2014); *Domagala*, 2013 IL 113688, ¶ 33. After counsel determines whether to amend the petition, the State may file either a motion to dismiss or an answer to the petition. 725 ILCS 5/122-5 (West 2014); *Domagala*, 2013 IL 113688, ¶ 33. At the second stage, the trial court must determine "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001).

¶ 36    If the defendant makes a "substantial showing" at the second stage, then the petition advances to a third-stage evidentiary hearing. *Domagala*, 2013 IL 113688, ¶ 34. At a third-stage evidentiary hearing, the trial court typically acts as factfinder, determining witness credibility and the weight to be given particular testimony and evidence and resolving any evidentiary conflicts. *Domagala*, 2013 IL 113688, ¶ 34.

¶ 37    Both the State and defendant agree that, since the trial court in the case at bar did not have to make any credibility determinations at the hearing below, our standard of review is *de novo*. Generally, we review a trial court's denial of a postconviction petition after a third-stage evidentiary hearing for manifest error, which occurs when an error is plain, evident, and indisputable. *People v. Rodriguez*, 402 Ill. App. 3d 932, 939 (2010); see *People v. Pellegrini*, 2019 IL App (3d) 170827, ¶ 51. However, "[i]f no credibility determinations are necessary, *i.e.*, no new evidence is presented and the issues are purely legal questions, we review the trial court's judgment *de novo*, unless the presiding judge has some relevant special expertise or familiarity with the trial or sentencing of the defendant." *Rodriguez*, 402 Ill. App. 3d at 939. In the case at bar, the trial judge was new to the case. She had not presided over the trial or sentencing or even the prior stage of these postconviction proceedings. Thus, our standard of

review is *de novo*. *De novo* consideration means that we perform the same analysis that a trial judge would perform. *People v. Schlosser*, 2017 IL App (1st) 150355, ¶ 28.

¶ 38    On appeal, the State argues that counsel complied with Rule 651(c) which governs the duties of postconviction counsel. Ill. S. Ct. R. 651(c) (July 1, 2017). However, this court has repeatedly found that "[t]he text of Rule 651(c) does not address counsel's duties beyond the second stage of postconviction proceedings." *People v. Custer*, 2020 IL App (3d) 160202-B, ¶ 39 n.2; *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 27 ("Rule 651(c) does not apply once a postconviction petition has been advanced to the third stage."); *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 59 (Rule 651(c) applies only to duties undertaken at the second stage). "It would be illogical to measure counsel's performance at the third stage by a standard applicable to the distinctly different second stage." *Pabello*, 2019 IL App (2d) 170867, ¶ 28.

¶ 39    "[T]he supreme court has rejected that presumption" that Rule 651(c) is the only measure of reasonable assistance during postconviction proceedings. *Pabello*, 2019 IL App (2d) 170867, ¶ 29. In *People v. Cotto*, 2016 IL 119006, ¶ 41, the court held that "Rule 651(c) is merely a vehicle for ensuring a reasonable level of assistance [citation] and should not be viewed as the only guarantee of reasonable assistance in postconviction proceedings." (Internal quotation marks omitted.) Thus, "the only standard applicable to a third-stage hearing is that of general reasonableness." *Pabello*, 2019 IL App (2d) 170867, ¶ 29.

¶ 40    The question of whether a trial court is required to appoint new counsel after postconviction counsel was previously found to have provided unreasonable assistance to the same defendant in the same proceeding is a purely legal question that we review *de novo*. *Schlosser*, 2017 IL App (1st) 150355, ¶ 28 (issues of what the Act requires are reviewed *de novo*).

¶ 41　　　This court[8] has previously found that it may be error for a trial court to reappoint the same postconviction counsel who was previously found to have provided unreasonable assistance. See *Schlosser*, 2017 IL App (1st) 150355, ¶ 36 ("it was error to reappoint the same APD [assistant public defender] after this court found that his representation was unreasonable"); see also *People v. Kelly*, 2012 IL App (1st) 101521, ¶¶ 40-41 (postconviction counsel's failure to provide a reasonable level of assistance required appointment of new counsel on remand); *People v. Nitz*, 2011 IL App (2d) 100031, ¶¶ 19, 21 (same); *People v. Jones*, 2016 IL App (3d) 140094, ¶¶ 33-34 (same); *People v. Shortridge*, 2012 IL App (4th) 100663, ¶¶ 14-15 (same).

¶ 42　　　This case illustrates the wisdom of appointing new counsel once counsel has already been found by a reviewing court to have rendered unreasonable assistance to the same defendant in the same proceeding.

¶ 43　　　The sole claim on remand was whether defendant's longer sentence was constitutionally disparate from his codefendant's shorter one. *Knight*, 2014 IL App (1st) 122931-U, ¶ 30. Defendant's petition claimed that they were disparate because Morris was found to be the actual shooter—a finding, in fact, made at Morris resentencing. This finding was, thus, the single most important fact underlying defendant's claim—and counsel stated it was not made.

¶ 44　　　The State argues that counsel's decision not to report the trial court's finding was strategy. However, a misstatement cannot be considered strategy.

---

[8]Like today's decision, *Schlosser*, 2017 IL App (1st) 150355, was also written by Justice Gordon, with concurrences by Justices Hall and Reyes.

¶ 45    This court has previously found that a remand is necessary, even if the allegations in a petition were insufficient to raise a constitutional issue, where postconviction counsel failed to fulfill the few duties imposed by Rule 651(c). *Schlosser*, 2017 IL App (1st) 150355, ¶¶ 41-44; *People v. Shelton*, 2018 IL App (2d) 160303, ¶ 37. Similarly, in the case at bar, a remand is necessary where counsel failed to fulfill the few duties imposed by this court's appellate mandate. *People v. Gonzalez*, 407 Ill. App. 3d 1026, 1037 (2011) (on remand, the remanding "opinion must be consulted in determining the appropriate course of action"). "It is axiomatic that a reviewing court that issues a mandate has the power to enforce the mandate and determine whether there has been compliance." *Gonzalez*, 407 Ill. App. 3d at 1037. In our prior order, we specifically instructed that the key facts from Morris's retrial and resentencing must "be presented to the circuit court on remand so it may fully consider defendant's disparate sentencing claim in an evidentiary hearing." *Knight*, 2014 IL App (1st) 122931-U, ¶ 33.

¶ 46    At Morris's resentencing, the trial judge who presided over both the original 1998 trial and Morris's retrial found, not only that Morris was the actual shooter, but also that Morris was "the moving force" behind the robbery plan. Not only did counsel fail to argue these important findings, but he actually stated just the opposite, arguing that at "resentencing" Morris was found to be merely accountable. This court remanded specifically so that the trial court and parties could consider "fully" the records of Morris's retrial and resentencing. *Knight*, 2014 IL App (1st) 122931-U, ¶ 33. Pursuant to our express direction, one of counsel's primary tasks on remand was to consider the trial court's findings at Morris's resentencing. This he failed to do. Without new counsel, the prior remand was "illusory." *Schlosser*, 2017 IL App (1st) 150355, ¶ 44.

¶ 47　　　　Thus, we remand for a new third-stage evidentiary hearing with appointment of new counsel, who may amend or supplement the petition as he or she sees fit.[9]

¶ 48　　　　　　　　　　　　　　　CONCLUSION

¶ 49　　　　For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

¶ 50　　　　Reversed and remanded.

---

[9] The State does not argue on appeal that defendant forfeited his claims by not asking the trial court on remand for appointment of new counsel, and "the rules of waiver and forfeiture are also applicable to the State." *People v. Reed*, 2016 IL app (1st) 140498, ¶ 13. "The State may forfeit a claim of forfeiture by failing to raise it." *People v. Jones*, 2018, IL App (1st) 151307, ¶ 47; see also *People v. Bahena*, 2020 IL App (1st) 180197 (for a list of cites to other cases for the same proposition). Thus, we find that the State has forfeited any claim of forfeiture with respect to the claims that defendant now raises on appeal.

**No. 1-17-0550**

| | |
|---|---|
| **Cite as:** | *People v. Knight*, 2020 IL App (1st) 170550 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 96-CR-123(03); the Hon. Neera Lall Walsh, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Todd T. McHenry, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Noah Montague, and Justin R. Erb, Assistant State's Attorneys, of counsel), for the People. |