2022 IL App (1st) 200009-U

No. 1-20-0009

Order filed March 31, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 19312 |
| | ) | |
| TYRONE STONE, | ) | Honorable |
| | ) | Erica L. Reddick, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Justices Rochford and Martin concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Defendant was not denied the reasonable assistance of counsel by privately retained counsel.

¶ 2     Defendant, Tyrone Stone, who is currently serving a minimum 21-year sentence for armed robbery with a firearm, claims that his privately retained postconviction counsel, who drafted his petition for postconviction relief, rendered unreasonable assistance of counsel with respect to multiple allegations of ineffective assistance of trial counsel that were dismissed at the second

stage. Defendant does not challenge the trial court's dismissal of two additional claims of ineffective assistance of trial counsel that were the subject of a third-stage evidentiary hearing.

¶ 3    For the following reasons, we reject defendant's contention and affirm the trial court's judgment dismissing his petition.[1]

¶ 4                                    1. BACKGROUND

¶ 5    This court has previously had occasion to consider defendant's claims of error on direct appeal in *People v. Stone*, 2017 IL App (1st) 152325-U. The underlying facts of this case which have already been set forth in detail, are now briefly recounted here.

¶ 6    Defendant and codefendant Jeryl Bowdery were arrested on September 10, 2013, and charged with armed robbery and aggravated unlawful restraint. Defendant and codefendant had simultaneous but severed bench trials.

¶ 7    At trial, Ayodeji Adeleke testified that, on September 10, 2013, he was walking near the intersection of Belmont Avenue and North Racine Avenue in Chicago when he saw two men walking on the sidewalk. Adeleke, a church pastor originally from Nigeria, approached the men and asked them if they were from Ghana because "they looked like people from Africa," and he wanted to "witness to people on the street." The men did not understand what Adeleke had asked, so he continued walking northbound on Racine. Adeleke testified that this interaction lasted about 20 seconds. After a minute of walking, Adeleke heard someone call, "hey, man from Ghana." Adeleke turned around and saw the two men walking toward him, but he continued walking

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

northbound as he was not sure if they were referring to him. Thirty seconds later, he again heard someone call out, "hey, the man from Ghana." Adeleke turned and was approached by the men.

¶ 8    The men asked Adeleke how to get to a nearby train station, and he gave them directions. During this conversation, one of the men, whom Adeleke identified in court as codefendant Bowdery, pulled out a "brownish small gun." He heard Bowdery cock the gun and ask him for his wallet. Adeleke gave Bowdery his wallet. The other man, whom Adeleke identified in court as defendant, then asked him for his cell phone, which he gave to defendant. Adeleke described how, while Bowdery was holding the gun, defendant "was standing with his hand in his pocket" as if he also had a gun. Bowdery then told Adeleke to run away. He testified that this second interaction lasted a minute and a half.

¶ 9    Adeleke took a step backward, ducked behind a nearby tree, and shouted, "[s]omeone call 911." Defendant and Bowdery ran away down a nearby street. Adeleke then shouted, "I was just being [*sic*] robbed by two black guys and they ran toward this way" and started to chase the men, as people in the area started calling 911. A pedestrian walking on a street down which the men had fled told Adeleke which way they had run. Adeleke circled back around to Belmont Avenue to make sure that the men did not board a bus. There, he saw Chicago police officers and told them about the robbery.

¶ 10    The officers led him to an alley behind the building where the robbery had occurred, and Adeleke identified defendant, seated in the back of the police vehicle, as the man who had taken his cell phone. Adeleke later made a lineup identification of codefendant.

¶ 11    Officer Raul Cerda testified that he and his partner received a dispatch call about a robbery near Belmont and Racine. Upon arriving at the scene, Officer Cerda began searching for the

offenders. At the mouth of an alley off of Racine Avenue, Officer Cerda's vehicle cut off a "young black man" (defendant) who had "been running at the alley." Defendant was wearing a backpack.

¶ 12    Officer Cerda and his partner exited the vehicle and detained defendant, who was immediately identified by Adeleke no more than two minutes later. A search of defendant's backpack revealed a cell phone that Adeleke identified as the phone that defendant took from him.

¶ 13    The officers found Bowdery lying behind a garbage can in the alley. Both men were transported to a police station, where Officer Cerda inventoried defendant's bag and its contents.

¶ 14    After he was *Mirandized*, defendant stated Bowdery was his cousin. After Adeleke asked the two whether they were from Ghana and walked away, codefendant said he wanted "to poke" Adeleke, meaning rob him. Codefendant pulled a gun on Adeleke and demanded his wallet. After Adeleke handed his wallet to codefendant, codefendant demanded Adeleke's cell phone. Adeleke handed his cell phone to defendant, and defendant and codefendant ran away.

¶ 15    Based on this evidence, the trial court found defendant guilty of armed robbery with a firearm and aggravated unlawful restraint. After a hearing, the court merged the aggravated unlawful restraint count and sentenced defendant to 21 years' imprisonment for the armed robbery.

¶ 16    On direct appeal, defendant maintained that trial counsel was ineffective for failing to file a pretrial motion to suppress evidence where: (1) the officers lacked reasonable suspicion to justify a *Terry* stop; (2) the initial showup and subsequent in-court identification of defendant were unnecessarily suggestive; and (3) the officers lacked probable cause to arrest him. In affirming defendant's conviction and sentence, we rejected defendant's second claim of ineffective assistance of counsel, finding that counsel's failure to file a motion, challenging the procedures used in the showup, did not constitute deficient performance because such a motion would have

been meritless. *Id.* ¶ 35. However, we declined to consider defendant's first and third claims of ineffective assistance of counsel based on our determination that the record was not sufficiently developed to permit such review. *Id.* ¶¶ 26-30. In the absence of a more detailed record, we determined that these claims were better suited to a postconviction proceeding rather than a direct appeal. *Id.* ¶ 28.

¶ 17 On March 16, 2018, privately retained counsel filed a petition for postconviction relief on defendant's behalf. The petition referenced this court's prior decision and asserted those ineffective assistance of counsel claims not previously considered by this court. Defendant also renewed his claim of ineffective assistance of counsel that was based on trial counsel's failure to file a motion to suppress the victim's identification of him. Additionally, the petition alleged that trial counsel denied defendant the effective assistance of counsel where he: (1) failed to subpoena 911 calls made in relation to this offense; (2) failed to move to sever his case from that of his codefendant; (3) failed to "meaningfully cross-examine any of the State's witnesses"; (4) failed to meet with defendant in his office to review reports or discuss the case with defendant for two years; (5) failed to advise defendant that he was facing a minimum 21-year sentence; and (6) failed to file any pretrial motions based on his expressed belief that the victim would not appear to testify at trial.

¶ 18 On June 4, 2018, the trial court advanced the petition to the second stage.

¶ 19 On February 27, 2019, the State filed a motion to dismiss defendant's petition. Relying on Section 122-2 of the Post-Conviction Hearing Act (725 ILCS 5/122-2 (West 2018)), the State maintained that defendant's petition was procedurally deficient where it lacked supporting affidavits, records, or other evidence. Additionally, the State alleged that defendant's claim of

ineffective assistance of counsel predicated on the failure to file a motion to suppress identification was barred by *res judicata* and failed on its merits. The State offered a substantive response to each of defendant's remaining claims of ineffective assistance of counsel.

¶ 20    On April 1, 2019, the trial court held a hearing on the State's motion to dismiss. Postconviction counsel focused on the two claims not reached by this court on direct appeal; trial counsel's failure to move to quash defendant's arrest and suppress evidence based on an alleged absence of reasonable suspicion or probable cause. The trial court took the matter under advisement and continued the case to April 15, 2019.

¶ 21    On April 15, 2019, the trial court advanced the two claims that postconviction counsel had made the subject of his focus at the April 1 hearing to the third stage. The State was ordered to file an answer. On May 8, 2019, the State filed an answer that denied defendant's contention that he was deprived of the effective assistance of counsel.

¶ 22    On October 23, 2019, the trial court held a third-stage evidentiary hearing on defendant's claim that counsel was ineffective for failing to file a motion to quash his arrest and suppress evidence.

¶ 23    Postconviction counsel called former trial counsel Richard Dickinson to testify. Mr. Dickinson testified that he represented defendant in this matter. Mr. Dickinson had practiced law for 42 years, and his primary focus was criminal defense. In his handling of thousands of cases over the course of his career, Mr. Dickinson had filed between 700 and 800 pretrial motions.

¶ 24    Mr. Dickinson testified that defendant was apprehended after walking or running down an alley shortly after the victim was robbed. He recalled that defendant was apprehended in an alley close to the crime scene and was sweating when he was apprehended. Mr. Dickinson recalled that

there was "an issue regarding a shirt." He also recalled a 911 call of two male blacks running through the neighborhood and being in an alley. Mr. Dickinson did not recall whether there was a description of the black males but believed there was a description of defendant as wearing a shirt that had the letters "PHD."

¶ 25    Mr. Dickinson recalled that defendant was placed in a squad car after being apprehended and was identified by the victim while defendant was seated in the backseat of the car. Mr. Dickinson testified that the police recovered from defendant's backpack a shirt that defendant was described as wearing at the time of the robbery. Mr. Dickinson also believed that the victim's cell phone was found in codefendant's possession.[2]

¶ 26    Mr. Dickinson testified that he did not file a pretrial motion to suppress because: "[t]hey had just gotten a description. It was close in time – two male blacks fleeing the robbery scene. I didn't see where there was a basis to file a motion to quash arrest."

¶ 27    On cross-examination, Mr. Dickinson testified that after reviewing the recording of the 911 call, police reports, and speaking with defendant, he determined that a pretrial motion would be meritless.

¶ 28    On redirect examination, Mr. Dickinson clarified that while the record did not independently establish that the recording of the 911 call was tendered to him, he believed it was tendered in discovery and that he had listened to it.

¶ 29    After Mr. Dickinson's testimony, postconviction counsel requested a continuance to conduct a further investigation based on defendant's claim that no recording of the 911 call was

_____

[2] The trial testimony established that the victim's cell phone was found in defendant's backpack.

ever produced in discovery. Over the State's objection, the trial court granted the defense counsel's request.

¶ 30   On November 6, 2019, the court noted that the case had been continued to see if there was any additional evidence that defendant wished to introduce. Postconviction counsel informed the court that his investigation conclusively established "that there is no question that the 911 tapes, in this case, were turned over to [trial counsel] in this matter." The State made the discovery receipt part of the record.

¶ 31   The parties then presented final arguments as to whether defendant's petition for postconviction relief should be granted. After the arguments, postconviction counsel informed the trial court that defendant "did specifically ask me to ask your Honor if he could address the Court." The court granted defendant permission to do so. Defendant stated the following:

> "DEFENDANT: Your Honor, the events of September 10, 2013, never should have happened, and more than that, I should never should have been associated in any kind of way. I am truly sorry for the event that happened, and if I could bring back that day, I would get down on my knees and beg for his forgiveness.

> And I repent everyday for my sins, the ones that I can remember and the once I can't. I made – That's not my character. I was a follower; I wasn't a leader. My time in the penitentiary, I've been able to change myself and establish myself more as a man, mentally, spiritually, physically, I've grown, I've been a better person.

I've been able to continue my growth through studying, through my – I've got my certificates for food, certificate with construction. I kept my blog going, you congratulated me on getting that started when I got out on bond, you congratulated me with me doing that as far as sentencing is concerned, and I kept it going even while in the penitentiary -- inside of the penitentiary.

Your Honor, I asked in 2015 for a second chance, and I'm asking you for a second chance to be able to just get some time back. I understand the seriousness of this, and to be part of something that could have hurt somebody physically or mentally, that's not me, I'm not a – I'm not a violent person, I'm not a person that would reoffend, a person that would catch another case. I understand that there are bigger things in life than just thinking that everything is a game, your Honor, I understand that wholeheartedly, and I'm asking for a second chance. I understand the seriousness of this case, I truly do, and I understand how much of an uphill battle that this has been from the start, and I put myself in this, I understand that I put myself in -- and I take 100 percent accountability for my actions, you understand, I completely understand that.

And I just want to be able to raise my kids while they're still kids. I know I wasn't thinking about my kids in September, back in 2013, but I'm sober now, I'm just asking if there is any leniency that can be shown, can you please take that into consideration. And I thank you for that time."

¶ 32    On November 19, 2019, the trial court issued its oral ruling:

"THE COURT: This matter comes on the Court's call today for ruling as to the post-conviction petition at third stage after evidentiary hearing. I will note that the defendant/petitioner has raised several issues.

The petitioner alleges that he did not receive the effective assistance of counsel and enumerates the several grounds upon which he bases the claim, specifically that trial counsel for Mr. Stone failed to file any pretrial motions to quash arrest or suppress evidence;

That he failed to subpoena the 911 tapes from the Chicago Police Department; That he failed to file a pretrial motion to suppress the on-scene identification of the petitioner, that was a showup;

That he failed to file a pretrial motion to suppress the petitioner's alleged admission of being involved in the armed robbery;

That trial counsel failed to file a motion to sever, although noting that the codefendant did file such a motion which was granted before trial proceeded;

That trial counsel failed to meaningfully cross-examine any of the State's witnesses;

That, additionally, defendant's trial counsel was ineffective for failing to properly advise or represent the defendant, Mr. Stone;

In other significant ways specifically that he did not meet with Defendant Stone a single time in his office to review the reports or to discuss the case with the

petitioner in almost two years that the matter was pending and that his only contact during the time was in very brief conversations either before or after court;

That he never advised the defendant of the minimum 21-year sentence that he faced under the statute;

That he told the defendant repeatedly that the alleged victim would not appear to testify at trial, which was his justification for never filing any pretrial motions;

And that, further, the actions of the defendant's counsel's trial strategy amounted to an unconstitutional violation of his rights to a fair trial.

It is further alleged that the police actions in pursuing the defendant and the codefendant immediately after the allegations were ones that amounted to a custodial arrest and a seizure, which resulted in incriminating evidence being obtained and that this was all accomplished without probable cause;

And further, and accentuating the claim that trial counsel's failure to obtain 911 tapes operated to prejudice the defendant at trial and the allegation is that the separate and individual actions in that collectively all operated to deprive the defendant of a fair trial.

I believe, before we commence[d] the hearing, however, there was a narrowing of the issues. The State, for its part, asks the Court to find that the petitioner has failed to establish any of the claims alleged, again, the primary focus being the claim of ineffective assistance of counsel. And the State has done a

thorough job of enumerating the legal bases and the arguments based on the facts herein.

As it pertains to the hearing, the evidence that was presented to the Court, the focus was, again, with respect to what trial counsel knew and whether or not those decisions were ones of strategy and whether, in fact, the ultimate decisions and undertakings of trial counsel operated to deprive the defendant, Mr. Stone, of a fair hearing.

As part of the evidence as well, the Court did hear from Mr. Stone himself wherein he talked very openly and forthrightly about his actions that day and the effect of certain decisions that he has made and how they have impacted his life, that prior to the events, the events that unfolded, which resulted in the charges in this case and the ultimate conviction of Mr. Stone were not ones that he routinely engaged with and that since the time of his having been convicted and up to the point of our last court appearance, he's had time to consider the events that have occurred and can state forthrightly again that they are not ones that bespeak who he is and has been in his life.

The Court did consider all of the evidence under the required burden of proof. The Appellate Court excellently and famously spelled out the legal standards with respect to the establishing of whether a claim of ineffective assistance lies. The Court -- the Appellate Court I'm speaking of -- specifically ruled and found that it was not shown that the showup was a violation of the defendant's constitutional rights, that under the facts of the case the evidence that was before

the Court, the Court was able to make that determination. So clearly that issue is -- res judicata applies. It has been decided.

As to the remaining issues and claims, with respect to motions that should have been raised and specifically about the 911 tapes, I think at the conclusion of the evidence in the hearing, defense Counsel Minkus did own that there was clear evidence that defense counsel had access to the 911 tapes and there is, in fact, an exhibit introduced by the State to establish that those matters were tendered and within the possession of trial counsel.

Under oath, trial counsel very frankly testified that based on his many years of serving as a criminal defense attorney and his review of the facts of the case, that he did not find that there was a sufficient basis for the filing of additional pretrial motions that it is alleged were not filed to the detriment of Mr. Stone's constitutional rights.

And the Court, considering the sum of all the evidence, without going into exhaustive detail as to each, finds that after the third stage hearing and again under the required burden of proof that the petitioner has not established by a preponderance of the evidence any of the elements required to establish that trial counsel was ineffective for his failure to file the motions, any of the alleged unfiled pretrial motions. The record simply as it exists does not support that the trial counsel performed at a level that was below what is required and nor that there was any prejudice that was suffered as a consequence of it based on the evidence in the record during this third stage hearing.

I did enumerate all of the -- the fullness of all of the allegations and, again, based on the evidence that's used in this record at this third stage hearing, I find that none of the allegations has been supported by the evidence. So, again, hearing quite clearly the forthright statements of Mr. Stone, unfortunately the Court's determination does not rest on some of the issues that were raised but really is purely a legal analysis. And so upon analyzing and applying the law to the evidence in this particular case, the petitioner's request for post-conviction relief is denied."

¶ 33                                   II. ANALYSIS

¶ 34     On appeal, defendant does not challenge the trial court's second or third-stage rulings in this matter. Instead, defendant alleges that postconviction counsel provided unreasonable assistance by failing to substantiate those claims dismissed at the second stage with additional affidavits or other evidence requiring that they too be advanced to a third-stage evidentiary hearing. We review this claim *de novo*. *People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007).

¶ 35     The State maintains that defendant is unable to demonstrate a deprivation of his right to the reasonable assistance of counsel. We agree with the State.

¶ 36               A. General Principles Under the Post-Conviction Hearing Act

¶ 37     The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (2018) "provides a method by which persons under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. Johnson*, 2017 IL 120310, ¶ 14. Proceedings under the Act advance in three stages. *Id.* At the first stage, the circuit court reviews a petition to determine if it

is frivolous or patently without merit. *People v. Allen*, 2015 IL 113135, ¶ 21. If the petition is not dismissed at that stage, it is docketed for further consideration. *Id.*

¶ 38     The State may then move to dismiss the petition or answer it. *People v. Cotto*, 2016 IL 119006, ¶ 27. If the State moves to dismiss, the court must determine "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Bailey*, 2017 IL 121450, ¶ 18.

¶ 39     During second-stage review, the court examines only "the legal sufficiency of the petition," without "engag[ing] in any fact-finding or credibility determinations." (Internal quotation marks omitted.) *People v. Domagala*, 2013 IL 113688, ¶ 35. In other words, the court asks, "whether the allegations in the petition, liberally construed in favor of the petitioner and taken as true, are sufficient to invoke relief under the Act." *People v. Sanders*, 2016 IL 118123, ¶ 31. Despite this liberal pleading standard, the court need not accept as true facts that are positively rebutted by the trial record. *People v. Dupree*, 2018 IL 122307, ¶ 29.

¶ 40     If the court finds that a petition makes the requisite showing, the petition advances to the third stage of proceedings, where the court conducts an evidentiary hearing. *Bailey*, 2017 IL 121450, ¶ 18. If a petition does not make a substantial showing of a constitutional violation, it is dismissed. *Id.*

¶ 41                      B. The Guarantee of Reasonable Assistance of Counsel

¶ 42     A postconviction petitioner does not have a constitutional right to counsel. *People v. Moore*, 189 Ill. 2d 521, 541 (2000). However, a postconviction petitioner is entitled to the reasonable assistance of counsel. *People v. Owens*, 139 Ill. 2d 351, 358 (1990). Reasonable

assistance of counsel is significantly lower than effective assistance under our state and federal constitutions." *People v. Custer*, 2019 IL 123339, ¶ 30.

¶ 43    Reasonable assistance of counsel, however, does not require "bolstering every claim presented in a petitioner's *pro se* postconviction petition, regardless of its legal merit, or presenting each and every witness or shred of evidence the petitioner believes could potentially support his position." *Id.* ¶ 38. Nor is postconviction counsel required to go on a "fishing expedition" to find evidence outside the record that might corroborate a defendant's claims. *People v. Malone*, 2017 IL App (3d) 140165, ¶ 10 (citing *People v. Vasquez*, 356 Ill. App. 3d 420, 425 (2005)). "In the ordinary case, a trial court's ruling upon a motion to dismiss a post-conviction petition which is not supported by affidavits or other documents may reasonably presume that post-conviction counsel made a concerted effort to obtain affidavits in support of the post-conviction claims but was unable to do so." *People v. Johnson*, 154 Ill. 2d 227, 241 (1993).

¶ 44    To further the guarantee of reasonable assistance of counsel, Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) imposes specific duties on postconviction counsel at the second stage. *People v. Knight*, 2020 IL App (1st) 170550, ¶ 38; *People v. Kirk*, 2012 IL App (1st) 101606, ¶ 18. Rule 651 (c) requires that postconviction counsel certify that he or she:

> "has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 45   In those cases in which Rule 651 does apply, noncompliance with the rule requires a remand without any showing of prejudice. *Suarez*, 224 Ill. 2d at 51-52.

¶ 46   The plain language of Rule 651 limits its application to postconviction petitions initiated by *pro se* filings. In *Cotto*, the court found that while Rule 651 does not apply to attorney-drafted postconviction petitions, the guarantee of reasonable assistance of counsel extends to both appointed counsel and privately retained counsel at the second stage. *Cotto*, 2016 IL 119006, ¶ 42.

¶ 47   In *People v. Johnson*, 2018 IL 122227, ¶ 23, the court clarified that a defendant's right to the reasonable assistance of counsel also includes his representation by privately-retained counsel at the first stage.

¶ 48                    C. The Impact of this Court's Holding in *People v. Zareski*

¶ 49   Here, the parties agree that those claims dismissed at the second stage were legally insufficient to constitute a substantial showing of a constitutional violation such that a third-stage evidentiary hearing was required. Essentially, defendant asks us to extend our supreme court's holding in *Suarez* to the facts of his case. In other words, defendant maintains that he need not demonstrate any prejudice to show a deprivation of his right to the reasonable assistance of counsel even though Rule 651(c) is not implicated in this case.

¶ 50   This court rejected a strikingly similar claim in *People v. Zareski*, 2017 IL App (1st) 150836. In *Zareski*, the defendant appealed from the trial court's second-stage dismissal of his attorney-drafted petition for postconviction relief. *Id*. ¶ 1. The defendant alleged, *inter alia*, that counsel provided unreasonable assistance of counsel where he either "should have raised certain claims in the postconviction stage, or raised them differently." *Id*. ¶ 4. As in this case, the defendant raised numerous claims of ineffective assistance of trial counsel, some of which were previously

raised on direct appeal. *Id.* ¶¶ 26-27. The defendant urged that the appellate court only consider the deficiencies in the claims as presented and not whether they had any underlying merit. *Id.* ¶ 46.

¶ 51    The court began by noting that, as a general matter, a defendant who asserts a denial of his right to the effective assistance of counsel must demonstrate resulting prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* ¶ 49. *United States v. Chronic*, 466 U.S. 648 (1984), and its progeny provide for narrowly circumscribed exceptions to that general rule. *Id.* ¶ 48.[3]

¶ 52    The court continued by observing that the guarantee of "reasonable assistance" is a lower standard than "effective assistance" under *Strickland*. *Id.* ¶ 50. Illinois Supreme Court Rule 651, which is designed to implement the right of reasonable assistance, is directed to "the most common scenario" where counsel is appointed to assist a *pro se* petitioner whose petition has been advanced to second-stage proceedings. *Id.* ¶ 51. While Rule 651 applies to both appointed and privately retained counsel after a *pro se* petition is advanced to the second stage, it does not apply when counsel is privately retained to file the initial petition. *Id.* (citing *Cotto*, 2016 IL 119006, ¶ 41.)

¶ 53    The court further acknowledged that *Suarez* held that counsel's failure to file a Rule 651 certificate of compliance necessitated a remand for further postconviction proceedings "regardless of whether the claims raised in the petition had merit." *Id.* ¶ 52 (citing *Suarez*, 224 Ill. 2d at 47). The court noted the seeming contradiction if the lower reasonable assistance standard was placed

---

[3] Prejudice may be presumed to result from the ineffective assistance of counsel where (1) a defendant is denied counsel at a critical stage of the proceedings, (2) counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," or (3) counsel represents a client under circumstances that disallow him from providing effective assistance. *People v. Cherry*, 2016 IL 118728, ¶ 25.

on an equal footing with *Cronic*-type errors. *Id.* ¶ 54. The court then proceeded to reconcile this apparent contradiction in the following manner:

> "We believe the answer lies in Rule 651. *Suarez* relied on that rule (as did *People v. Schlosser*, 2012 IL App (1st) 092523, another case cited by Zareski). The real key of the *Suarez* holding was not that Suarez's counsel had provided unreasonable assistance but that Suarez's counsel had violated a supreme court rule. That failure justified remanding "regardless of merit." But *Suarez* does not say that this automatic-remand rule must apply to retained counsel, who are not guided by Rule 651 if retained at the first stage of proceedings. And, given the logic, we believe that the *Suarez* rule applies only to counsel who have been appointed or retained at the second stage to assist a *pro se* petitioner, not to retained counsel who file the first stage petition. If a prisoner retains counsel at the first stage, he or she is entitled to reasonable assistance, but not to the additional protections of Rule 651 and *Suarez*'s holding. (This comports with the State's interest in protecting *pro se* prisoners over prisoners who can afford to retain their own counsel.)" *Id.* ¶ 55.

¶ 54    The court then determined that it would be appropriate to utilize a "*Strickland*-like analysis" to consider whether the defendant was denied the reasonable assistance of counsel. *Id.* ¶ 59. The court found that the defendant was required to show that the potential claim had merit, regardless of whether postconviction counsel "should have presented it earlier, better, or at all." *Id.* ¶ 61.

¶ 55    The court then considered each of the defendant's claims of ineffective assistance of counsel, finding that he failed to demonstrate prejudice where: (1) the defendant failed to show how a better cross-examination of a witness by trial counsel would have benefitted him; (2) the trial court rejected the defendant's claim of ineffective assistance of counsel based on trial counsel's failure to move to suppress lineup identifications of him; (3) postconviction counsel raised claims of ineffective assistance of counsel that were barred by *res judicata*; (4) postconviction counsel's failure to raise a freestanding claim of actual innocence would not have been successful; and, (5) trial counsel's failure to advise the defendant of the sentencing range for first and second-degree murder was "of no moment" to his claim that it resulted in him making an unknowing waiver of his right to a second-degree murder instruction. *Id*. ¶¶ 54-55.

¶ 56    We agree with the court's well-reasoned decision in *Zareski* and adopt its reasoning as one basis for rejecting defendant's claim that he was denied the reasonable assistance of counsel. We find that when Rule 651 is not implicated, a defendant whose retained attorney files his postconviction petition at the first stage must demonstrate resulting prejudice to successfully establish that he was denied the reasonable assistance of counsel.

¶ 57                    D. Defendant Has Failed to Establish a Deprivation of His
                         Right to the Reasonable Assistance of Counsel

¶ 58                    1. Postconviction Counsel's Representation of Defendant

¶ 59    Before considering the question of whether defendant is able to demonstrate prejudice on the basis of any of his rejected assertions of ineffective assistance of trial counsel, we begin by considering what the record reveals in terms of postconviction counsel's representation of defendant *in toto*. We believe this to be the proper starting point for our inquiry based on our supreme court's holding in the procedurally apposite case of *People v. Cotto*, 2016 IL 119006.

¶ 60    As in this case, in *Cotto*, privately-retained counsel filed the defendant's first-stage postconviction petition which was then advanced to the second stage where it was dismissed by the trial court. *Id.* ¶¶ 11-14.

¶ 61    The court began by noting the split in the appellate court as to whether a postconviction petitioner represented by privately retained counsel was entitled to a reasonable level of assistance at the second stage of postconviction proceedings. *Id.* ¶ 1. After determining that the guarantee of reasonable assistance applied to both retained and appointed postconviction counsel, the court considered whether postconviction counsel's representation met that standard. *Id.* ¶¶ 41-43.

¶ 62    The court reviewed the defendant's claim that postconviction counsel's failure to provide an adequate explanation for the untimely filing of his petition precluded him from prevailing on the merits of his petition on review. *Id.* ¶ 44. The court rejected the defendant's contention, finding that postconviction counsel "ably discharged his duties." *Id.* ¶ 50. The court's finding was arrived at only after it considered the petition's "detailed claims of ineffective assistance by trial counsel, claims of ineffective assistance by appellate counsel, and claims alleging a violation of defendant's due process rights," as well as those documents supporting his claims. *Id.* ¶¶ 46, 50.

¶ 63    We understand *Cotto* to authorize us to determine whether postconviction counsel provided reasonable assistance by considering his actions *in toto*. The record in this case does not substantiate defendant's claim that postconviction counsel's representation fell below that standard.

¶ 64    Postconviction counsel relied on our prior decision to successfully obtain a third-stage evidentiary hearing on the two allegations of ineffective assistance of counsel that we declined to consider in defendant's direct appeal. At the hearing on the State's motion to dismiss,

postconviction counsel focused exclusively on these claims to support his insistence on the necessity of a third-stage evidentiary hearing. He then pursued these allegations by examining trial counsel as to his reason for not filing a motion to quash arrest and suppress evidence.

¶ 65 Additionally, the record reveals that before hearing final arguments, the trial court made the following inquiry of postconviction counsel:

"THE COURT: Well, but to clarify, did you consult with Mr. Stone to ascertain each of his contentions of Constitution[al] deprivation?

MR. MINKUS: Just to clarify, Judge, yes, I did.

THE COURT: So the motion that you filed contains all of your understanding of any and all post-conviction or Constitutional matters that he raised.

MR. MINKUS: That's correct, Judge.

THE COURT: All right. Then I am ready to hear the final argument."

¶ 66 The record supports the conclusion that postconviction counsel made a valid strategic choice to focus on what plainly appear to be defendant's strongest claims of ineffective assistance of counsel. Postconviction counsel's actions support the conclusion that he afforded defendant what defendant was entitled to, the reasonable assistance of counsel.

¶ 67 2. Defendant Cannot Establish Prejudice Where His Underlying Claims of Ineffective Assistance of Trial Counsel are Meritless

¶ 68 In accordance with *Zareski*, we now consider the merits of defendant's underlying claims to determine whether he can show prejudice. Defendant alleges that postconviction counsel "failed to support the allegations raised in the petition with competent evidence, failed to shape the claims

into appropriate legal form, presented claims that were procedurally barred and rebutted by the record and failed to present non-frivolous claims of ineffective assistance of trial counsel, thereby preventing the advancement of [defendant's] potentially meritorious claims."

¶ 69    Defendant has failed to either assert what potentially meritorious claim he had or explain what additional information should have been included by counsel to make any of his claims meritorious. See *Cotto*, 2016 IL 119006, ¶ 50. He offers no facts, evidence, or documents to support any of his claims better.

¶ 70    First, the parties agree that defendant's claim related to the failure to move to suppress the victim's identification of him is barred by *res judicata*. As in *Zareski*, we reject the notion that counsel's attempt to resurrect a previously rejected claim will support a claim of unreasonable assistance of counsel where he cannot explain how such action caused him any prejudice. *Zareski*, 2017 IL App (1st) 150836, ¶ 68.

¶ 71    Defendant's charges of ineffective assistance of counsel based on trial counsel's alleged failure to obtain the 911 tapes and failure to file a motion to sever also cannot support a claim of unreasonable assistance of counsel where they are both affirmatively refuted by the record. *People v. Domagala*, 2013 IL 113688, ¶ 35.

¶ 72    Nor does defendant's claim that trial counsel failed to advise him of the minimum 21-year sentence, in itself, establish the substantial violation of a constitutional right. "[N]ot every petition can be amended to state a substantial constitutional claim." *People v. Bass*, 2018 IL App (1st) 152650, ¶ 16.

¶ 73    We agree with the State that defendant's attempt to shore up the lack of prejudice by speculating that defendant might have "explored guilty plea negotiations" had he been aware that

the minimum sentence fails. The record affirmatively establishes that the State did not extend a plea offer below the minimum 21-year sentence. Further, the record establishes that when defendant moved to alter the conditions of his bond to allow him to leave Illinois, the State relied on the 21-year minimum sentence as a basis for opposing the motion. Defendant's claim is entirely speculative, not supported by the record, and does not demonstrate a denial of his right to the reasonable assistance of counsel.

¶ 74 The parties also agree that defendant's remaining complaints that trial counsel failed to meaningfully cross-examine the State's witness and only met with defendant before and after court proceedings were not allegations that established the violation of a substantial constitutional right. Again, defendant has not offered any facts, evidence, or documents that trial counsel should have relied on to further support these claims. The mere allegation that counsel should have done more is not sufficient to establish a deprivation of defendant's right to the reasonable assistance of counsel. *People v. Malone*, 2017 IL App (3d) 140165, ¶ 10 (citing *People v. Stovall*, 47 Ill. 2d 42, 46 (1970)). We further note that trial counsel's cross-examination of the victim, in this case, comprises 11 pages of the report of proceedings. In sum, the record does not support defendant's allegations that trial counsel's actions denied him the effective assistance of counsel.

¶ 75 Finally, defendant's claim that trial counsel failed to file a motion to suppress based on his expressed belief that the victim would not testify against defendant cannot provide a basis for us to conclude that defendant was denied the effective assistance of counsel. The trial court considered the testimony of Mr. Dickinson and determined that counsel's failure to move to quash defendant's arrest and suppress evidence did not constitute ineffective assistance of counsel.

¶ 76 In conclusion, defendant has failed to establish a deprivation of his right to the reasonable assistance of counsel where he has failed to show any resulting prejudice.

¶ 77 III. CONCLUSION

¶ 78 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 79 Affirmed.